IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

WILLIAM F. JONES, JR.                                                                                       PLAINTIFF

v.                                             No. 5:06CV120 JLH

DAVID WHEELER, Individually and in his Official Capacity;
LEE FREEMAN, Individually and in his Official Capacity                          DEFENDANTS

**OPINION AND ORDER**

William F. Jones, Jr., brought claims for violation of his Fourth and Fourteenth Amendment[1] rights pursuant to 42 U.S.C. § 1983, a civil conspiracy claim under 42 U.S.C. § 1983, and state-law claims for assault, battery, and false imprisonment against Jefferson County Deputy Sheriff David Wheeler and Pine Bluff Police Officer Lee Freeman, in their individual and official capacities. Freeman, individually and in his official capacity, has moved for summary judgment. Wheeler, in his official capacity, has moved for summary judgment.[2] For the following reasons, these motions are granted in part and denied in part.

---

[1] Jones's complaint also claims violation of his "federal constitution rights" to be free of "summary punishment" and "cruel and unusual." Although the Eighth Amendment guarantees the right to be free of "cruel and unusual punishments," Jones has not expressly asserted an Eighth Amendment violation. Moreover, the Eighth Amendment does not apply before a formal adjudication of guilt against an individual. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 2983, 77 L. Ed. 2d 605 (1983). At the time of the events in this case, Jones was suspected of dealing drugs from his home, but had not been prosecuted for or adjudicated guilty of these alleged crimes. The Court therefore does not interpret Jones's complaint as asserting a claim under the Eighth Amendment.

[2] Wheeler did not fully brief his motion for summary judgment. In his supporting brief, however, Wheeler sets forth certain facts relevant to Jones's claims against Wheeler and states that "[t]he balance of the arguments and facts as pled by separate Defendant Freeman are equally applicable to the allegations levied against Wheeler and would entitle him to summary judgment in his official capacity to the same extent as Officer Freeman." The Court construes Wheeler's motion for summary judgment as advancing any arguments asserted by Freeman that are also relevant to Wheeler's motion.

A court should grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis of its motion and identifying the portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Group Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 753, 763 (8th Cir. 2003). When the moving party has carried its burden under Rule 56(c), the non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1985) (quoting FED. R. CIV. P. 56(e)). The non-moving party sustains this burden by showing that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a non-moving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. In deciding a motion for summary judgment, the Court must view the facts and inferences in the light most favorable to the party opposing summary judgment. *Boerner v. Brown & Williamson Tobacco Corp.*, 260 F.3d 837, 841 (8th Cir. 2001) (citing *Rabuska v. Crane Co.*, 122 F.3d 559, 562 (8th Cir. 1997)). If the evidence would allow a reasonable jury to return a verdict for the non-moving party, summary judgment should be denied.

*Derickson v. Fidelity Life Assoc.*, 77 F.3d 263, 264 (8th Cir. 1996) (citing *Anderson*, 477 U.S. at 248).

**I.**

On or about June 16, 2005, Freeman, Wheeler, and several other officers of the Tri-County Drug Task Force executed a search warrant on Jones's residence. Wheeler, a Jefferson County Deputy Sheriff, entered the home first, followed by the other officers. Freeman, a Pine Bluff Police Officer, was fourth or fifth in the line of officers as they entered Jones's home.

Two individuals, Jones's brother and a woman, were in the front room of Jones's home. Jones was in the back of the home in a bedroom. The parties agree that Jones, his brother, and the woman all complied with the officers' commands to get down on the floor and were handcuffed. None of the three occupants of the home resisted the officers.

The parties disagree, however, as to what happened when Jones was handcuffed. Jones testified that Wheeler pulled Jones's hand back over his head trying to get it behind his back, causing injury to Jones's hand. He further testified that Freeman hit him in the side with a flashlight or similar object, causing injury to Jones's hip. Jones admits, however, that three officers went ahead of Freeman to secure Jones in the back room, that Freeman and another officer put handcuffs on Jones's brother and the woman in the front room, and that Jones, after being handcuffed, was escorted into the front room. Wheeler admits that he handcuffed Jones, but denies pulling on Jones's hand or otherwise using any force on Jones. Freeman denies hitting Jones or even touching him at any time during the encounter. Wheeler and Freeman both testified that Freeman was not in the bedroom when Jones was handcuffed.

After Jones, his brother, and the woman were handcuffed, they were held in the front room by one officer while Freeman, Wheeler, and the other officers searched the home. The officers did not have an arrest warrant for Jones. Wheeler and Freeman both testified that the policies of their law enforcement agencies require that all occupants of a home are to be handcuffed and detained while a search warrant is executed. The record does not reveal the length of time that Jones and the other two individuals remained handcuffed. Freeman testified that he thought the search lasted from about 5:00 p.m. to 6:10 p.m., but that he was not sure of this information.

Jones also asserts that Wheeler and Freeman damaged his property by knocking his door off its hinges, knocking holes in his walls, and destroying his furniture. Freeman and Wheeler both testified that the officers knocked at Jones's door upon their arrival, announced their presence, and waited a few seconds, but no one answered the door. Wheeler admitted that he pulled Jones's door open, but denied knocking it off the hinges. Wheeler and Freeman both denied putting any holes in the walls. During his deposition, Freeman was asked, "In your training in executing search warrants, what are you told about damage to personal property?" Freeman responded, "We would have to pay for it, so that's why we don't do it." Both Wheeler and Freeman testified that they did not notice whether the walls already had any holes in them at the time of the search.

Jones admitted in his deposition that he did not actually see Wheeler or Freeman damage his property. He denies that the officers knocked and announced their presence, however, and he testified that he heard a "big bang" when the officers entered his home. Jones stated that could not see what was happening throughout his home during the search because he was held in one spot, "[b]ut when [he] came back in there, stuff was all tore up." Jones has produced photographs of his home, showing holes in the sheetrock walls.

The parties agree that it is a policy, practice, and custom of the City of Pine Bluff that police officers "shall use only that force that is reasonably necessary to effectively bring an incident under control, while protecting the lives of the officer or anther [sic]" and that police officers should never violate the constitutional rights of citizens. The parties also agree that the Jefferson County Sheriff's Department has a use of force policy that provides that the use of force should be in direct relation to the level of threat encountered by an officer with the officer using the least amount of force necessary to subdue an individual.

Freeman and Wheeler both testified that handcuffing all occupants of a residence is standard procedure when executing a search warrant. Wheeler stated that this procedure is for officer safety. Wheeler testified that exceptions to this rule may apply, however, for small children or elderly or pregnant individuals. Neither Wheeler nor Freeman indicated whether this standard procedure is the product of an official policy of Jefferson County, the City of Pine Bluff, or the Tri-County Drug Task Force.

## II.

Wheeler and Freeman both seek summary judgment in their official capacities. Freeman also seeks summary judgment in his individual capacity, while Wheeler admits that, if Jones's testimony is believed, Jones has established claims against Wheeler individually.

**A.     Freeman in his Individual Capacity**

Jones asserts claims against Freeman in his individual capacity arising from Jones's alleged hip injury, his detention during the search, and the alleged damage to Jones's property caused during the search. Jones asserts a violation of his Fourth Amendment right against excessive force and

5

state-law claims for assault and battery arising from Freeman's alleged actions in hitting Jones's hip.[3] Jones asserts that his Fourteenth Amendment right against deprivation of property without due process of law was violated by Freeman's destruction of property during the search. Jones asserts claims for violation of his Fourth Amendment right against unreasonable seizure, violation his Fourteenth Amendment right against deprivation of liberty without due process of law, and false imprisonment under state law arising from his detention during the search.  Finally, Jones claims that Freeman and Wheeler conspired with each other to deprive him of his constitutional rights.

Freeman first argues that he is entitled to qualified immunity. Freeman then argues that, even if he has no immunity, he is entitled to summary judgment as to all of Jones's claims because Jones has not produced evidence from which a reasonable jury could find Freeman liable. These issues are addressed separately below.

### 1. Qualified Immunity

Qualified immunity shields law enforcement officers from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). "Qualified immunity is an affirmative defense for which the defendant carries the burden of proof." *Sparr v. Ward*, 306 F.3d 589, 593 (8th Cir. 2002). The purpose of qualified immunity is to allow public officials to perform their duties in a manner they believe to be correct without fear for their own financial well-being. *Id*. "Toward this end, the rule has evolved that an official performing discretionary functions will generally be immune from liability unless a reasonable person in his position would have known his actions violated clearly

---

[3] Jones does not contend that Freeman caused the alleged injury to Jones's hand.

established law." *Id*. (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987)).

"A court engaged in a qualified immunity inquiry uses a two-step process." *Lawyer v. City of Council Bluffs*, 361 F.3d 1099, 1103 (8th Cir. 2004). The first question is, taken in the light most favorable to the party asserting the injury, whether the facts alleged show that the official's conduct violated a constitutional right. *Craighead v. Lee*, 399 F.3d 954, 961 (8th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001)). "If the facts, taken in the light most favorable to the party asserting the injury, show that the [official's] conduct violated a constitutional right, the second question is whether the right was clearly established." *Id*.

"The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person." *Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998). The constitutional right to be free from the deprivation of property without due process of law is also clearly established. *See, e.g.*, *Craft v. Wipf*, 836 F.2d 412, 416 (8th Cir. 1987) ( "By 1982, it was clearly established that the government must accord procedural due process before depriving a person of a protected property interest."). The unjustified destruction of private property during the execution of a search warrant constitutes such a deprivation. *See, e.g.*, *Ginter v. Stallcup*, 869 F.2d 384, 388 (8th Cir. 1989) ("[T]he law prohibiting unnecessarily destructive behavior while searching a citizen's home was clearly established in 1983."). *See also McMahon v. City of Dubuque, Iowa*, 255 F.2d 154, 160 (8th Cir. 1958) ("[F]ederal courts will not permit the destruction of private property under the pretense of police power, and will not hesitate to condemn the erratic exercise thereof, resulting in depriving parties of constitutional rights . . . .").

The thrust of Freeman's argument as to these issues is that Jones has not proven that Freeman harmed him or damaged his property and that "an officer could not reasonably believe that he could be liable for" such damages if he did not cause them. However, at this stage the Court must view the evidence in the light most favorable to Jones. Jones testified that Freeman struck him with his flashlight and caused injury to his hip. The undisputed fact is that Jones did not resist the officers. A reasonable officer in this situation would know that hitting Jones while he was being handcuffed would be a violation of Jones's Fourth Amendment rights. Jones says that the walls did not have holes before the search, but they did have holes after the search. Freeman admits that officers should not put holes in the wall during the execution of a search warrant, and he does not allege that such damage would have been reasonable in this case. Under these circumstances, a reasonable officer would also know that damaging Jones's home in this manner during the search would violate Jones's constitutional right to be free of the deprivation of property without due process.

As to the alleged constitutional violations resulting from Jones's detention during the search, however, Freeman is entitled to qualified immunity because a reasonable police officer would not believe such detention to be unconstitutional in light the Supreme Court's jurisprudence on detention of individuals during the execution of search warrants. In *Michigan v. Summers*, 452 U.S. 692, 705, 101 S. Ct. 2587, 2595, 69 L. Ed. 2d 340 (1981), the Supreme Court held that a valid warrant to search for contraband implicitly carries with it the limited authority to detain the occupants of the premises while the search is conducted. Applying this holding to a case involving the detention of a home's occupant handcuffed in the garage, the Supreme Court later explained:

> Inherent in *Summers'* authorization to detain an occupant of the place to be searched is the authority to use reasonable force to effectuate the detention. Indeed, *Summers*

> itself stressed that the risk of harm to officers and occupants is minimized "if the officers routinely exercise unquestioned command of the situation."
>
> The officers' use of force in the form of handcuffs to effectuate [the plaintiff's] detention in the garage, as well as the detention of the three other occupants, was reasonable because the governmental interests outweigh the marginal intrusion. The imposition of correctly applied handcuffs on [the plaintiff], who was already being lawfully detained during a search of the house, was undoubtedly a separate intrusion in addition to detention in the converted garage. The detention was thus more intrusive than that which we upheld in *Summers*.
>
> But this was no ordinary search. The governmental interests in not only detaining, but using handcuffs, are that their maximum when, as here, a warrant authorizes a search for weapons and a wanted gang member resides on the premises. In such inherently dangerous situations, the use of handcuffs minimizes the risk of harm to both officers and occupants. Though this safety risk inherent in executing a search warrant for weapons was sufficient to justify the use of handcuffs, the need to detain multiple occupants made the use of handcuffs all the more reasonable.
>
> [The plaintiff] argues that, even if the use of handcuffs to detain her in the garage was reasonable as an initial matter, the duration of the use of handcuffs made the detention unreasonable. The duration of a detention can, of course, affect the balance of interests . . . . However, the 2- to 3-hour detention in handcuffs in this case does not outweigh the government's continuing safety interests.

*Muehler v. Mena*, 544 U.S. 93, 98-100, 125 S. Ct. 1465, 1470-71, 161 L. Ed. 2d 299 (2005) (internal citations omitted).

The situation confronted by the officers in this case was, in some respects, less dangerous than that confronted by the officers in *Muehler*. The house that was searched in *Muehler* was believed to be the residence of a gang member who had been involved in a drive-by shooting and was considered armed and dangerous. *Id.* at 96-97, 125 S. Ct. at 1468. The record in this case contains no evidence that Jones was suspected of violence.

Even so, the police in this case were confronting a potentially dangerous situation. The search warrant was premised on Jones's alleged drug trafficking and authorized the police to search

9

his home for illegal drugs, guns, ammunition, and related paraphernalia. Federal courts have long recognized the dangers inherent in these circumstances. *See, e.g.*, *Summers*, 452 U.S. at 702, 101 S. Ct. at 2594 ("[T]he execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence."). *Cf. United States v. Cash*, 378 F.3d 745, 748 (8th Cir. 2004) ("[I]t is reasonable for an officer to believe that an individual may be armed and dangerous when that individual is suspected of being involved in a drug transaction because weapons and violence are frequently associated with drug transactions."); *United States v. Simon*, 767 F.2d 524, 527 (8th Cir. 1985) ("Firearms are known 'tools of the trade' of narcotics dealing because of the dangers inherent in that line of work.").

Moreover, the evidence in this case does not suggest that the manner of Jones's detention was any more intrusive than the manner of detention used in *Muehler*. The plaintiff in *Muehler* was handcuffed for two to three hours, *Muehler*, 544 U.S. at 100, 125 S. Ct. at 1471, and asked the officers to remove the handcuffs during this time, *id.* at 107, 125 S. Ct. at 1475 (Stevens, J., concurring). While the exact length of Jones's detention is uncertain, Freeman's unrebutted testimony suggests that it was much less than two hours. Jones has neither alleged nor produced evidence that the handcuffs were improperly applied or that he was detained in an uncomfortable or unsafe location. *Cf. United States v. Maltais*, 403 F.3d 550, 556 & n.4 (8th Cir. 2005) (detention was not objectively unreasonable where plaintiff was held in patrol car for at least 90 minutes and not allowed to urinate; plaintiff made "no allegation that he suffered real pain or serious discomfort"). Wheeler testified that Jones never complained to him that he was having difficultly with his allegedly injured hand as a result of the handcuffs. Freeman testified that Jones did not complain of any problem with his hand and that the officers would have been required by policy to

provide medical attention to Jones he had done so. Under these circumstances, a reasonable officer in Freeman's position would not believe that Jones's detention was unconstitutional under clearly established law.

Freeman is entitled to qualified immunity as to Jones's claims that he was subjected to an unlawful seizure under the Fourth Amendment and deprived of his liberty without due process of law in violation of the Fourteenth Amendment as a result of his detention during the search. Freeman is not entitled to qualified immunity as to any of the remaining federal claims arising from Jones's alleged injury due to the use of excessive force or the alleged damage to Jones's property.

Although Freeman has moved for summary judgment on the ground of qualified immunity without distinguishing between Jones's state and federal claims, the arguments advanced above relate only to claims for constitutional violations under 42 U.S.C. § 1983. Freeman has neither asserted nor presented any legal authority to support the proposition that he is entitled to qualified immunity as to Jones's tort claims under Arkansas law. Freeman has therefore failed to establish that he is entitled to qualified immunity as to Jones's state-law claims.

## 2. Jones's Claim of False Imprisonment

In Arkansas, false imprisonment, also known as "false arrest," is "the unlawful violation of the personal liberty of another consisting of detention without sufficient legal authority." *Headrick v. Wal-Mart Stores, Inc.*, 293 Ark. 433, 435, 738 S.W.2d 418, 420 (1987) (citations omitted). For example, an officer who makes an arrest pursuant to a properly issued warrant is not liable for false imprisonment. *Id.* at 436, 738 S.W.2d at 420 (quoting RESTATEMENT (SECOND) OF TORTS § 45A cmt. (1965)). The parties agree that Jones was detained during the search even though no arrest warrant was issued for him. The validity of the search warrant is not in dispute. The issue is

therefore whether Freeman's detention of Jones during the course of the search was "unlawful," i.e., "without sufficient legal authority."

Jones has not briefed the issue of whether summary judgment should be granted on the claim of false imprisonment. In ruling on the qualified immunity issue, the Court stated above that Freeman could reasonably believe that he needed to detain Jones during the search because of the inherent danger of the situation. Pursuant to Ark. R. Crim. P. 13.3(f), Freeman therefore had sufficient legal authority to detain Jones during the search.

Freeman's motion for summary judgment as to Jones's false imprisonment claim is granted.

### 3.     Jones's Claims Arising from His Alleged Hip Injury

As noted above, Jones has stated claims for violation of his Fourth Amendment right to be free of excessive force and for assault and battery arising from the hip injury that allegedly occurred when Freeman hit Jones with a flashlight or other hard object. Freeman argues that Jones has failed to establish the existence of a genuine issue of material fact as to the issue of whether Freeman struck Jones because Jones admits that when the officers entered his home three of them went ahead of Freeman to secure Jones in the back bedroom. Jones further admits that Freeman and another officer put handcuffs on Jones's brother and the woman in the front room, and that Jones, after being handcuffed, was escorted into the front room. Freeman argues that this undisputed evidence establishes that he did not strike Jones when Jones was being handcuffed, because Freeman could not have been in the front room and the back bedroom of Jones's home at the same time.

Jones identified Freeman, however, and testified that Freeman hit him in the side with a flashlight or similar object. Jones's testimony may not be consistent, but any inconsistency goes to Jones's credibility, which must be judged by the jury, whose role is to weigh the evidence and assess

the credibility of witnesses.  *See McGee v. S. Pemiscot Sch. Dist. R-V*, 712 F.2d 339, 344 (8th Cir. 1983).

Freeman's motion for summary judgment as to Jones's Fourth Amendment claim of excessive force and state-law claims of assault and battery is denied.

### 4. Jones's Claim Arising from Alleged Property Damage

Finally, Freeman argues that Jones has not established the existence of a genuine issue of material fact as to his Fourteenth Amendment claim for deprivation of property without due process of law because Jones admits that he did not see Freeman cause any damage to the property.

Jones has presented circumstantial evidence that the officers who searched his home put holes in the walls and caused other damage.  Jones testified that he heard a "big bang" when the officers entered his home and that after the search he "came back in there[ and] stuff was all tore up." Jones has also produced photographs of his home showing holes in the wall.  Freeman denies that there were holes in the wall at the time of the search and denies that any damage was done during the search.  The jury is entitled to believe that the walls were damaged during the search, which necessarily means that the jury is entitled to disbelieve Freeman's testimony that no damage was done during the search.  If the jury concludes that Freeman is lying when he says that no damage was done during the search, it could infer that he is lying because he is the one who caused the damage. The Supreme Court has said:

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.  Neither do we suggest that the trial courts should act other than with caution in granting summary judgment or that the trial court may not deny

>summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986) (citations omitted).

Freeman's motion for summary judgment as to Jones's Fourteenth Amendment claim for deprivation of property without due process of law is therefore granted.

**B.     Wheeler and Freeman in Their Official Capacities**

Jones's complaint states that this is an action against Wheeler and Freeman in their official capacities "as police officers of the Tri-County Drug Task Force, in Pine Bluff, Arkansas." Wheeler and Freeman first argue that they are entitled to summary judgment in their official capacities because the Tri-County Drug Task Force is not an entity subject to suit. While Wheeler and Freeman are most likely correct in asserting that the Task Force is not subject to suit, *see Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992), the Court declines to grant summary judgment on this basis.

Under the Federal Rules of Civil Procedure, "[a]ll pleadings shall be so construed as to do substantial justice." "[P]leadings must be construed liberally to prevent errors in draftsmanship or the like from barring justice to litigants," and "must be construed favorably to the pleader and judged by substance rather than form." *Mut. Creamery Ins. Co. v. Iowa Nat'l Mut. Ins. Co.*, 427 F.2d 504, 507-08 (8th Cir. 1970). *See also E. I. du Pont de Nemours & Co. v. Berkley & Co., Inc.*, 620 F.2d 1247, 1268 n.37 (8th Cir. 1980) ("ambiguous pleadings are to be construed liberally in favor of the pleader"); *Windsor v. Bethesda Gen. Hosp.*, 523 F.2d 891, 893 (8th Cir. 1975) (pleadings in civil rights actions are to be liberally construed). Jones's complaint can be reasonably construed as

asserting claims against Wheeler and Freeman in their official capacities as law enforcement officers of the governmental bodies by which they are employed. The parties agree that Wheeler is an officer of Jefferson County and that Freeman is an officer of the City of Pine Bluff. "A suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). The Court thus construes Jones's official capacity claims as claims against Jefferson County and the City of Pine Bluff.

The defendants further argue, however, that they are entitled to summary judgment even assuming that Jones has stated claims against an entity subject to suit because Jones has not alleged that a policy or custom of the City of Pine Bluff or Jefferson County caused the alleged constitutional violations. As noted above, Jones asserts both federal constitutional violations under 42 U.S.C. § 1983 and tort claims under Arkansas state law. These issues are addressed separately below.

### 1. Claims Under Federal Law

Forty-two U.S.C. § 1983 provides that any "person" acting under color of state law who subjects another to the deprivation of constitutional rights shall be liable to the injured party. A local governmental body such as a city or a county is considered a "person" subject to § 1983 liability. *Scheeler v. City of St. Cloud, Minn.*, 402 F.3d 826, 832 (8th Cir. 2005). Such a governmental body may not be held vicariously liable, however, for the unconstitutional acts of employees. *See, e.g.*, *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). It may be held liable only for constitutional violations which result from a policy or custom of the city or county. *E.g.*, *Scheeler*, 402 F.3d at 832; *Mettler*, 165 F.3d at 1204.

The Eighth Circuit does not use the terms "policy" and "custom" interchangeably when analyzing a governmental body's potential liability under § 1983. *Mettler*, 165 F.3d at 1204. This

Court must therefore consider whether the defendants have established that Jefferson County and the City of Pine Bluff are entitled to judgment as a matter of law that Jones's constitutional rights were not violated through the implementation of either their policies or their customs.  *See id.*

"[A] 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters."  *Id.*  Jones admits that it is the policy of the City of Pine Bluff Police Department to never violate the constitutional rights of citizens and that police officers must use only the amount of force necessary to bring an incident under control.  The alleged violations of Jones's constitutional rights attributed to Freeman therefore did not result from the implementation of Pine Bluff's policies.

Jones further admits that the Jefferson County Sheriff's department has a use of force policy which provides that the use of force should be in direct relation to the level of threat encountered by the officer with the officer using the least amount of force necessary to subdue an individual.  This fact establishes that the alleged violations of Jones's Fourth Amendment right to be free of excessive force attributed to Wheeler were not caused by the implementation of Jefferson County's policy. Although Wheeler has produced no evidence as to Jefferson County's policies regarding an individual's constitutional property rights, Jones has neither alleged nor produced evidence that Jefferson County has an unconstitutional policy in this regard.  A plaintiff seeking to impose § 1983 liability must identify an official policy, custom, or practice that caused his alleged injury. *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998).  Moreover, a party moving for summary judgment does not have the burden of negating the nonmoving party's claim when "there is absence of evidence to support the nonmoving party's case,"as "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported

claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986).

To prove that a "custom" exists, a plaintiff must prove (1) the existence of a continuing, widespread pattern of unconstitutional misconduct by employees; (2) deliberate indifference to or tacit authorization of such misconduct by the governmental entity's policymaking officials after notice to the officers of the misconduct; and (3) the custom was the "moving force" behind the constitutional violation. *Mettler*, 165 F.3d at 1204. As to the City of Pine Bluff, Jones admits that it is the custom and practice of the police department to never violation the constitutional rights of citizens and to use only the minimum force necessary to bring an incident under control. Although Wheeler has produced no evidence as to the customs of Jefferson County, Jones has neither alleged nor produced evidence of a widespread pattern of unconstitutional misconduct by Jefferson County employees or deliberate indifference to or tacit authorization of such misconduct by its policymaking officials. To the contrary, Jones testified in his deposition that he knows of no other occasions on which Wheeler or Jefferson County has used excessive force. The alleged violations of Jones's constitutional rights therefore did not result from a custom of the City of Pine Bluff or Jefferson County.

    **2.**    **Claims Under State Law**

Although Freeman and Wheeler have moved for summary judgment in their official capacities without distinguishing between Jones's state and federal claims, the arguments advanced above relate only to claims for violations of federal law under 42 U.S.C. § 1983. The defendants have neither argued nor presented any legal authority to support the proposition that they are entitled to summary judgment in their official capacities as to Jones's tort claims for assault, battery, and

false imprisonment. The defendants' motions for summary judgment as to Wheeler and Freeman in their official capacities are denied as to these claims.

**C.     Jones's Civil Conspiracy Claim**

Jones's complaint asserts that "the Defendant police officers conspired with each other to deprive Plaintiff of his liberty by summary punishment without due process in violation of the Fourteenth Amendment" and violated Jones's "clearly established and well settled federal constitution right[]" to "[f]reedom from a conspiracy to cover up the use of excessive force." The Court interprets these statements as a claim that Wheeler and Freeman, in their individual and official capacities, engaged in a civil conspiracy to violate Jones's constitutional rights under 42 U.S.C. § 1983.

Allegations of a conspiracy under § 1983 "must be pleaded with sufficient specificity and factual support to suggest a 'meeting of the minds.'" *Deck v. Leftridge*, 771 F.2d 1168, 1170 (8th Cir. 1985). The plaintiff "must at least allege that 'the defendants had directed themselves toward an unconstitutional action by virtue of a mutual understanding,' and provide some facts 'suggesting such a meeting of the minds.'" *Id.* (quoting *Smith v. Bacon*, 699 F.2d 434, 436 (1983)).

Jones has neither alleged any specific facts nor produced evidence showing that the defendants established a "mutual understanding" regarding any of the alleged actions that Jones asserts violated his constitutional rights. The defendants' motions for summary judgment as to Jones's conspiracy claim are granted.

**CONCLUSION**

Because Jones has produced no evidence that the alleged violations of his constitutional rights were caused by a policy or custom of either Jefferson County or the City of Pine Bluff,

Wheeler and Freeman's motions for summary judgment in their official capacities are granted as to Jones's claims for violations of his Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983. Documents #15 and #22. Wheeler and Freeman's motions for summary judgment in their official capacities are denied as to Jones's claims arising under Arkansas tort law, however, because they have asserted no grounds for summary judgment as to these claims. Documents #15 and #22.

Freeman in his individual capacity is entitled to qualified immunity as to Jones's Fourth Amendment claim for unlawful detention, as a reasonable officer in Freeman's position would have believed that he could detain Jones during the search under clearly established law. For the same reason, summary judgment is granted on Jones's state-law claim of false imprisonment.

Because Jones has alleged no specific facts and produced no evidence in support of his conspiracy claim, the defendants' motions for summary judgment are granted as to this claim. Documents #15 and #22.

Genuine issues of material fact remain, however, as to whether Freeman in his individual capacity is liable for using excessive force against Jones in violation of the Fourth Amendment, for damaging his property in violation of the Fourteenth Amendment, and for assault and battery, under Arkansas state law. Freeman's motion for summary judgment as to these claims is therefore denied. Document #15.

IT IS SO ORDERED this 1st day of June, 2007.

_J. Leon Holmes_
_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE